409 P.2d 64

Pete SALINAS and Allan Arthur Transportation, Inc., a corporation, Appellants,

v.

Esther R. KAHN, as surviving widow of Manuel S. Kahn, deceased, Allied Van Lines, Inc., a corporation, York Moving and Storage Co., a corporation, Sandra Branam, as personal representative of the Estate of Robert W. Branam, deceased, Sandra Branam, et al., and Nancy Hilligoss, aka Nancy Kahn, individually and as next best friend of Pamela Hilligoss, et al., Appellees.

No. 2 CA–CIV 43.

Court of Appeals of Arizona.

Dec. 22, 1965.

Rehearing Denied Jan. 25, 1966.

Review Denied Feb. 16, 1966.

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by D. Thompson Slutes, Tucson, for appellee Esther R. Kahn.

Hirsch, Van Slyke, Richter & Ollason, by Clague A. Van Slyke, Tucson, for appellee Nancy Hilligoss.

Chandler, Tullar, Udall & Richmond, by Thomas Chandler, Tucson, for appellees Allied Van Lines and Sandra Branam.

MOLLOY, Judge.

Vigorous motions for rehearing have called this court's attention to the fact that one of the "pellets" resulting in a reversal of this case did not find its mark of establishing reversible error.

A rereading of the record establishes that no proper objection was made by the appellants to the giving of the instruction informing the jury that " * * * where the accident caused is of the kind the Statute was intended to prevent, * * ". then the accident which occurred " * * * must be considered to be proximately caused by nonobservance of the law." The only objection made to this instruction was that there was no evidence of any violation of any statutory provision on the part of the appellants. This objection does not point out to the trial court the error in the subject instruction and therefore the giving of the instruction does not merit a reversal. Musgrave v. Githens, 80 Ariz. 188, 192, 294 P.2d 674, 677 (1956).

The same motions for rehearing call our attention to the fact that the opinion released by this court overstates the evidence in support of there being lights burning on the Allan Arthur Transportation rig immediately prior to the collision. Our previous opinion said: "All of the witnesses who testified at the trial indicated there were several red lights burning to the rear of the sheep trailer at the time of the accident." A rereading of the transcript convinces us that this statement should be withdrawn from the opinion and the following substituted.

Salinas, the driver of the Allan Arthur Transportation rig, testified that he turned

his clearance lights on the evening prior to the accident and checked to see that they were on before retiring to sleep in the cab of the truck. These clearance lights included nine taillights on the rear of the trailer, any one of which would satisfy the requirements of the subject statute. The lights on the trailer and the truck were connected and turned on with the same switch. After the accident, the clearance lights on the truck were still burning. The force of the impact was such that the tongue connecting the trailer to the truck was bent "* * * clear down underneath" and the bed of the truck was shoved one foot into the cab of the truck. Banning, a driver of a truck behind the Allied vehicle, testified that he observed the clearance lights of the Allan Arthur Transportation rig when he came around the slight curve in the highway approximately one mile east of the accident, that he saw the lights of the Allied Van truck merge into the lights of the Allan Arthur Transportation rig and then the lights of the Allied Van truck went out. When he got to the scene of the accident the lights on the trailer were off but the lights on the truck were still burning. The impeaching statement introduced into evidence as to Banning was to the effect that when he came around the curve in the highway he noticed "* * * a truck about one mile ahead of me with only half of his marker lights burning." Garcia, a truck driver behind Banning, confirmed that the lights on the sheep truck were on immediately after the accident and that the lights on the trailer were out. Other than this, there was no direct testimony one way or the other as to whether there was a red light burning on the rear of the Allan Arthur Transportation rig immediately prior to the collision.

 This being the testimony, this court sees no justification for giving an instruction involving A.R.S. § 28–936. Allied Van's argument that batteries may run down after a period of time is speculation that is refuted by the record. The lights were still burning on the sheep truck after the accident. The fact that the lights were off on the trailer is amply explained by the terrific force of this impact. Allied Van further argues that Garcia "saw no lights on the Allan Arthur truck until after the collision occurred," and that this is sufficient to go to the jury. This court finds no meat to this argument. Garcia testified that he was following the Banning truck, and Banning testified that he was following another truck, which in turn was following the Allied Van truck. The closest approximation of any negative testimony from Garcia was to the effect that he first became aware of the collision when Banning flicked his clearance lights three times, a trucker's signal of danger. Before negative testimony has any probative value a proper predicate must be laid. Shell Oil Company v. Collar, Ariz., 407 P.2d 380 (1965). Here we have neither negative testimony nor a proper predicate for negative testimony, if such had been developed.

Kahn's argument that the fact the accident happened in the manner that it did is some evidence that there were no lights on the rear of the Allan Arthur trailer has been discussed previously. Because of extreme cruciality of this one error, however, we repeat and supplement the undisputed facts of this accident which throw light upon this contention. The road prior to the time of the accident was straight for approximately one mile prior to the point of impact. There were no impediments to clear vision existing. The lights of the Allied truck were on. The Allied truck did not apply its brakes or take any evasive action whatsoever prior to impacting at approximately 60 miles an hour on the rear of the Allan Arthur trailer. In the opinion of this court, this fact situation does not lead in any way to the inference that there were no lights burning on the rear of the Allan Arthur rig.

In view of the many difficult legal problems presented to the trial court in connection with this action, this court is somewhat reluctant to reverse on the basis of a single error, significant as it may be. However,

in defense of the result reached, it should be noted that cumulatively, and considering errors as to which the proper objection was not made, the law given to this jury varies substantially, and perhaps fundamentally, from the law believed by this court to be pertinent to the facts of this case.

As modified in this supplemental opinion, the opinion heretofore issued herein is reaffirmed and the motion for rehearing is denied.

HATHAWAY, J., and RICHARD N. ROYLSTON, Superior Court Judge, concurring.

Note: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge RICHARD N. ROYLSTON was called to sit in his stead and participate in the determination of this decision.